IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MARGARET COFFIA, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> KILOLO KIJAKAZI, § <br> *Acting Commissioner of Social Security*, § <br> § <br> Defendant. § | Civil Action No. 4:22-cv-370-SDJ-KPJ |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Margaret Coffia ("Ms. Coffia") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income and disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

### I. APPLICABLE LAW

**A. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S.

137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show her impairment meets or equals a Listing but proves that she is unable to perform her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B. Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[2] is "'supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.'" *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Perales*, 402 U.S. at 401). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotations omitted).

## II.   BACKGROUND AND PROCEDURAL HISTORY

Ms. Coffia is fifty-five years old, has completed a bachelor's degree, and last worked as a door-to-door salesperson in 2019. *See* Tr. 60–61, 67–68.[3] On May 7, 2020, Ms. Coffia filed

---

[3] Documents 7-1 through 7-8 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

applications for supplemental security income and disability insurance benefits. *See id.* at 183–98. In her supplemental security income application, Ms. Coffia alleged disability since July 5, 2019, due to a "broken sternum, heart problem, hypertension, diabetes mellitus–type 2, and anemia." *Id.* at 227.

The Social Security Administration denied Ms. Coffia's claims initially on November 12, 2020, and upon reconsideration on February 23, 2021. *See id.* at 126–31, 136–39. On March 12, 2021, Ms. Coffia filed a request for a hearing. *See id.* at 140–41. On October 14, 2021, Administrative Law Judge Kim D. Parrish (the "ALJ") held a hearing. *See id.* at 57–81. This hearing was attended by telephone by Ms. Coffia, her attorney, and a vocational expert ("VE"). *See id.* at 57.

On November 3, 2021, the ALJ issued an unfavorable decision, denying Ms. Coffia's claims. *See id.* at 10–25. In her decision, the ALJ found Ms. Coffia met the insured status requirements of the Social Security Act through September 30, 2024. *See id.* at 15. At step one, the ALJ found that Ms. Coffia had not engaged in substantial gainful activity since July 5, 2019, Ms. Coffia's alleged onset date. *See id.* At step two, the ALJ found that Ms. Coffia's diabetes mellitus, anemia, and cervical pain were severe impairments and that Ms. Coffia's shoulder pain was a non-severe impairment. *See id.* at 15–16. At step three, the ALJ found that none of Ms. Coffia's impairments, alone or in conjunction, met or medically equaled a Listing. *See id.* at 16–20. Because the ALJ found that none of the impairments met a Listing, the ALJ proceeded to step four and assessed Ms. Coffia's RFC. *See id.* at 20–24. The ALJ found that Ms. Coffia had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no exposure to unprotected heights or dangerous machinery." *Id.* at 20. At step five, the ALJ determined that Ms. Coffia was capable of performing past relevant work as a sales clerk, housekeeper, office manager,

and sales representative. *See id.* at 24. The ALJ accordingly found that Ms. Coffia was not disabled as defined by the Social Security Act. *See id.* at 24–25.

Ms. Coffia requested that the Appeals Council review the ALJ's unfavorable decision. *See id.* at 180–82. On March 10, 2022, the Appeals Council denied the request for review. *See id.* at 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). On May 4, 2022, Ms. Coffia timely filed her appeal to this Court.[4] *See* Dkt. 1.

### III.   ANALYSIS

Ms. Coffia asserts the ALJ's RFC determination is not supported by substantial evidence, as "the ALJ improperly evaluated the opinion of Rafael Pomales, PA [("PA Pomales")] and provided invalid reasons for rejecting the opinion." Dkt. 10 at 1. Ms. Coffia also argues that the ALJ "crafted the RFC out of 'whole cloth,' without the support of a medical opinion." *Id.* The Court finds that remand is warranted because the ALJ failed to adequately explain the supportability of PA Pomales's opinion and impermissibly relied on her own lay opinion of the medical evidence.

#### A. Evaluation of PA Pomales's Opinion

Ms. Coffia argues that the ALJ's explanations of the supportability and consistency factors as to PA Pomales's opinion (Tr. 429–32, Ex. 5F) are flawed. *See* Dkt. 10 at 9–12. The Commissioner responds that, when read in the context of the ALJ's full opinion, the ALJ's supportability and consistency analyses are proper. *See* Dkt. 11 at 10–12.

---

[4] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 3.

5

When determining the persuasiveness of a medical opinion or prior administrative finding, the ALJ considers the following factors: (1) "Supportability"; (2) "Consistency"; (3) "Relationship with the Claimant"; (4) "Specialization"; and (5) "Other factors." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the "most important factors." 20 C.F.R. § 404.1520c(b)(2). Accordingly, the ALJ "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.*

"Supportability" refers to:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to:

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2). The ALJ "may, but [is] not required to, explain how [she] considered [the other factors]." 20 C.F.R. § 404.1520c(b)(2).

The record contains several "Progress Notes," the first dated January 17, 2019, and the most recent dated July 14, 2021, which were completed after Ms. Coffia's appointments with either PA Pomales or Hilda Martinez-Campos, APRN-FNP [Advanced Practice Registered Nurse-Family Nurse Practitioner]. *See* Tr. 387–428. Also in the record is a "Medical Opinion – Physical Conditions," dated August 30, 2021, wherein PA Pomales provided an assessment of how Ms. Coffia's complained-of conditions impacted her ability to work. *See id.* at 429–32. PA Pomales opined that Ms. Coffia would be absent from work three days per month and could lift less than ten pounds occasionally and more than ten pounds rarely. *See id.* at 23, 429–30. PA Pomales

6

opined that Ms. Coffia was limited to two hours of sitting and one hour of standing and walking per eight-hour workday. *See id.* at 23, 430. In addition, PA Pomales opined that Ms. Coffia would at least sometimes need a cane or walker to ambulate, could rarely reach overhead with her left arm/hand, and could reach in all other directions occasionally. *See id.* at 23, 431. Finally, PA Pomales opined that Ms. Coffia was limited to no crawling or rotating head and/or neck, occasional balancing, and rarely stooping, kneeling, and crouching. *See id.*

The ALJ found PA Pomales's opinion to be unpersuasive because "the medical source's own treatment records do not support the level of limitations alleged . . . ." *Id.* The ALJ found "[t]he claimant has not treated frequently," and "the record does not document any complaints or limitations related to diabetes." *Id.* The ALJ also noted Ms. Coffia had not needed a transfusion or any other treatment for her anemia in five years. *See id.* In addition, the ALJ found there was "no support for the extreme limitation with use of the left arm" since there was no treatment history for the left arm and even though "the left shoulder showed degenerative changes in the AC joint," the x-ray revealed "no acute osseous abnormalities." *Id.* (citing Ex. 3F/12). The ALJ further found there was no history warranting the limitations for sitting, standing, and walking. *See id.* Finally, the ALJ stated there was no support for the necessity of an assistive device since Ms. Coffia ambulated normally with no dysfunction of the lower extremities. *See id.*

The ALJ thoroughly analyzed the consistency of PA Pomales's opinion. True, the ALJ did not explicitly use the term "consistency." However, "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (quoting *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)); *see also Cox v. Comm'r of Soc. Sec.*, No. 3:21-CV-53-JMV, 2022 WL 834294, at *4 (N.D. Miss. Mar. 21, 2022) ("This Court is of the opinion that while the ALJ did not explicitly use the words 'supportability' or 'consistency,' it is

7

evident that the totality of his decision shows he properly considered these factors."); *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) ("Generally, there are no formalistic rules governing how an ALJ must articulate his decision." (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994))). In her discussion of PA Pomales's opinion, the ALJ found that "[t]here is no support for the extreme limitations with use of the left arm." Tr. 23. In another portion of the ALJ's opinion, the ALJ explained why, based on other evidence in the record, she found Ms. Coffia's left shoulder impairment was non-severe. *See id.* at 16; *accord Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) ("The ALJ's discussion of the persuasiveness of a medical opinion and the consistency and supportability factors is not confined to the specific discussion of the opinion itself but is considered in light of the entire RFC discussion and the evidence discussed therein."); *Teixeira v. Comm'r, SSA*, No. 4:21-CV-00003-SDJ-CAN, 2022 WL 3130859, at *9 n.15 (E.D. Tex. July 12, 2022), *R. & R. adopted*, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022) ("[T]he ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings[.]") (citation omitted). Moreover, Ms. Coffia does not challenge the ALJ's ultimate finding that Ms. Coffia's left shoulder impairment is non-severe. Therefore, considering the context of the full ALJ opinion, the ALJ adequately explained her finding that PA Pomales's opinion was inconsistent with other evidence in the record.

As to the supportability of PA Pomales's opinion, the ALJ stated: "The medical source's own treatment records do not support the level of limitations alleged in the medical source statement." Tr. 23. The ALJ further stated: "The claimant has not treated frequently and has generally only been seen for routine refill of diabetes medications." *Id.* It is not clear if the latter sentence is regarding the supportability of PA Pomales's opinion or its consistency with the other

8

evidence in the record. Even if the latter sentence is regarding supportability, however, the ALJ does not articulate how PA Pomales's opinion is not internally supported as to Ms. Coffia's shoulder and cervical impairments. As the preceding paragraph in the ALJ's opinion makes clear, the main findings in PA Pomales's opinion were related to the effects of Ms. Coffia's shoulder and cervical impairments. In her response, the Commissioner does not identify any other place in the ALJ's opinion where the supportability of PA Pomales's opinion is implicated, and she does not otherwise specifically explain how the ALJ's supportability analysis passes muster. Rather, the Commissioner generally argues, "The ALJ's discussion of PA Pomales's opinion – especially when taken in the context of the preceding narrative discussion underlying [her] non-severity and RFC findings – allows meaningful judicial review of his consideration of the supportability and consistency factors in evaluating the opinion." Dkt. 11 at 10. Additionally, as Ms. Coffia contends, in July 2021, Ms. Coffia had two appointments with PA Pomales regarding her shoulder and cervical pain, *see* Tr. 387–98, and in August 2021, PA Pomales completed his opinion detailing Ms. Coffia's limitations from those impairments, *see id.* at 429–32. This timeline indicates that, at the very least, PA Pomales saw Ms. Coffia on two occasions for her shoulder and cervical impairments prior to PA Pomales's issuing his opinion.

For these reasons, the Court finds that as to the supportability of PA Pomales's opinion, the ALJ's explanation was inadequate. *Accord Bridges v. Comm'r of Soc. Sec.*, No. 4:20-CV-89-DMB-DAS, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021), *R. & R. adopted sub nom. Bridges v. Saul*, 2021 WL 2907892 (N.D. Miss. July 9, 2021) ("Stating that a provider's records 'contained no objective findings,' to support an opinion, without any further explanation, is meaningless boilerplate. It violates not only the Commissioner's regulatory mandate, but the statutory mandate that SSA explain decisions denying benefits without which the courts cannot

conduct a meaningful review of administrative decisions." (citing *Audler v. Astrue*, 501 F.3d 446 (2007))).

### B. RFC Determination

Ms. Coffia argues that the ALJ created the RFC "out of whole cloth," as the ALJ found PA Pomales's opinion unpersuasive and neither of the reviewing State Agency Medical Consultants ("SAMCs"), Dr. Jeanine Kwun ("Dr. Kwun") and Dr. Stephen Arkin ("Dr. Arkin"), provided an assessment of the effects of Ms. Coffia's cervical and shoulder impairments on her ability to work. *See* Dkt. 10 at 13. The Commissioner asserts that the ALJ acted to properly determine the RFC, as is her sole responsibility. *See* Dkt. 11 at 12. Further, the Commissioner emphasizes that the SAMCs' determinations (no severe impairment) were less restrictive than the ALJ's determination (multiple severe impairments); therefore, there was necessarily substantial evidence in the record to support the ALJ's RFC. *See id.* at 11–13. In her reply, Ms. Coffia argues that because the ALJ rejected the only medical source that evaluated the effects of Ms. Coffia's shoulder and cervical impairments on her ability to work, in order for the ALJ to properly analyze the impact of Ms. Coffia's impairments on her ability to work, the ALJ was required to obtain some other medical source that included such an evaluation. *See* Dkt. 12 at 3.

The RFC is an assessment of a claimant's ability to do work on a sustained basis in an ordinary work setting despite the claimant's impairments. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). The RFC assessment is based on "all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations, SSR 96-8p, 1996 WL 374184, at *5. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's

10

claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citation omitted). "Determining a claimant's residual functioning capacity is the ALJ's responsibility, and he has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (citing *Ripley*, 67 F.3d at 557; *Holman v. Massanari*, 275 F.3d 43 (5th Cir. 2001)). However, "[i]n determining a claimant's RFC, an ALJ may not—without medical experts' opinions—derive the applicant's RFC solely from evidence of his claimed medical conditions." *Cary G. T. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-1948, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (citing *Ripley*, 67 F.3d at 557). The ALJ is not allowed to rely on her "own unsupported opinion of the limitations the applicant's medical conditions might present." *Id.* (citing *Ripley*, 67 F.3d at 557). "ALJs 'must be careful not to succumb to the temptation to play doctor' or make their own independent medical assessments." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). When determining a claimant's RFC, the ALJ is required to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). This is because symptoms from other impairments "may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" *Id.*

Dr. Kwun and Dr. Arkin each reviewed Ms. Coffia's medical history to determine whether she qualified for SSI and DIB. *See* Tr. 85–99, 103–21. This medical history included the notes of Dr. Mahmood Panjwani ("Dr. Panjwani"), who acted as a Consulting Examiner, and a report from Methodist Richardson Medical Center. *See id.*; *see also id.* at 363–66. Dr. Kwun determined that Ms. Coffia had only non-severe impairments. *See id.* at 96–97. Dr. Kwun found Ms. Coffia was not disabled and, thus, she did not provide an RFC. *See id.* On reconsideration, Dr. Arkin found

11

Ms. Coffia was not disabled and, thus, he did not provide an RFC. *Id.* at 109–10, 119–20. Both SAMCs noted that there were no medical records to reconcile or evaluate, and both stated that "[n]o RFC assessments are associated with this claim." *Id.* at 90, 98, 110, 120. When analyzing the SAMCs' findings, the ALJ noted that the SAMCs "determined the claimant's impairments were non-severe and there was insufficient evidence to evaluate the claimant." *Id.* at 24 (citations omitted). The ALJ found the findings of Dr. Kwun and Dr. Arkin to be partially persuasive. *See id*. Additionally, as stated above, the ALJ found Pomales's opinion to be unpersuasive. *See id.* at 23.

The Commissioner does not identify any evidence relied upon by the ALJ that discusses the impact of the cervical impairment on Ms. Coffia's ability to work. The ALJ found Ms. Coffia's cervical impairment to be severe. As both SAMCs found Ms. Coffia's cervical impairment to be non-severe, the SAMCs did not opine as to how the cervical impairment would impact Ms. Coffia's ability to work; the SAMCs did not discuss Ms. Coffia's cervical impairment beyond indicating the existence of a hospital CT scan that showed no cervical fractures. *See* Tr. at 88, 96, 108, 117. Further, Dr. Panjwani did not discuss the cervical impairment whatsoever. *See id.* at 362–66. Accordingly, PA Pomales issued the only medical opinion regarding the cervical impairment and its impact on Ms. Coffia's ability to work. *See id.* at 429–432. However, the ALJ found PA Pomales's opinion to be unpersuasive; hence, it cannot support any finding by the ALJ. *See Cooper v. Comm'r of Soc. Sec.*, No. 7:21-CV-00104-O-BP, 2022 WL 4538315, at *5 (N.D. Tex. July 15, 2022), *R. & R. adopted*, 2022 WL 4538460 (N.D. Tex. Sept. 27, 2022) ("[T]he record here contains several medical source statements, but the ALJ rejected them all. Thus, there is an 'absence' of such a statement here not because the record itself was deficient, but because the ALJ determined the existing statements in the record were all unpersuasive.").

The duty to "develop the facts fully and fairly," *Ripley*, 67 F.3d at 557, is critical where, as here, the ALJ assessed an impairment as severe at step two but then did not assign a limitation specifically for that impairment, *see, e.g.*, *Risinger v. Comm'r*, No. 6:12-cv-885, 2014 WL 4829527, at *7–9 (E.D. Tex. Sept. 26, 2014) (finding the ALJ erred by not including manipulative limitations in the RFC after finding severe impairments because the ALJ did not thoroughly explain why he did not include such limitations). Because the ALJ did not rely on any medical opinion that discussed the effects of Ms. Coffia's cervical impairment on her ability to work, the Court must conclude that the ALJ's RFC as to this condition was based on her own interpretation of the medical evidence in the record. Therefore, the ALJ's finding that Ms. Coffia's cervical impairment was severe but did not result in any limitations is not supported by substantial evidence. *See Ripley*, 67 F.3d at 557–58 (remanding since "the record does not clearly establish the effect [the plaintiff]'s condition had on his ability to work"); *Sadler v. Comm'r of Soc. Sec.*, No. 4:21-CV-821-SDJ-KPJ, 2023 WL 3735578, at *6 (E.D. Tex. Feb. 26, 2023) (finding the burden of substantial evidence was not met when the ALJ rejected every medical opinion regarding the plaintiff's ability to work); *Martinez v. Kijakazi*, No. 3:20-CV-3282-BH, 2022 WL 4590577, at *21 (N.D. Tex. Sept. 29, 2022) ("There are no medical opinions in the record regarding the effects Plaintiff's mental impairments had on his ability to work . . . , so the ALJ appears to have relied on his own interpretation of the medical and other evidence, which he may not do."); *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011), *R. & R. adopted*, 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011) ("Without some explanation in the record as to how plaintiff can suffer from a severe impairment, which by definition must have more than a minimal effect on plaintiff's ability to work and why such severe impairment would not have had any limitation on plaintiff's ability to handle objects or pose other manipulative

limitations which would affect the jobs identified by the vocational expert, the decision cannot stand."); *Bailey v. Astrue*, No. CIV.A 08-1795, 2010 WL 452122, at *4 (W.D. La. Feb. 8, 2010) ("[H]aving discounted the assessment of the physician who considered the effects of plaintiff's impairments, the instant record remains otherwise devoid of the requisite medical assessment or corroborating evidence to support the ALJ's residual functional capacity determination.").

The Commissioner relies on *Webster v. Kijakazi*, which held, "Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of [a medical expert], it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards." 19 F.4th 715, 719 (5th Cir. 2019). *Webster* is distinguishable from the instant case. There, in creating the RFC, the ALJ relied on two reports that discussed the impact of the claimant's impairment on the claimant's ability to work. *See id.* Here, the ALJ did not do the same—the ALJ found unpersuasive the only medical report discussing the impact of Ms. Coffia's cervical impairment in work-related terms.

While there is not a large quantity of evidence in the record related to Ms. Coffia's cervical impairment, the ALJ still had the duty to fully and fairly develop the record as to that condition, which she found to be severe. *See Martinez*, 2011 WL 4128837, at *7 ("[T]his Court cannot find that the ALJ's inclusion of the [condition] as a severe impairment was merely meaningless verbiage."). The ALJ found PA Pomales's RFC unpersuasive, and no other medical opinion provides information on the effects, if any, that Ms. Coffia's cervical impairment had on her ability to work. Accordingly, the Court must conclude the ALJ relied on her own interpretation of the medical evidence to assess the impact of Ms. Coffia's cervical impairment on her ability to work.

## C. Prejudice

A court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that (1) the ALJ failed to fulfill her duty to develop the record adequately, and (2) that failure prejudiced the plaintiff. *See Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996) (per curiam). Prejudice occurs when procedural errors "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler*, 501 F.3d at 448 (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)).

The Court finds that both of the errors identified above prejudiced Ms. Coffia. The ALJ's rejection of PA Pomales's opinion was based in part on an inadequate explanation of supportability. PA Pomales opined that Ms. Coffia had more severe limitations than those the ALJ found. Further, once this opinion was rejected, the ALJ was left with only the SAMCs' reports, which did not opine as to the effect of Ms. Coffia's cervical impairment on her ability to work. Accordingly, had the ALJ credited PA Pomales's opinion, the ALJ's assessment of Ms. Coffia's RFC may have been different. *Accord Thornhill v. Colvin*, No. 14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Dec. 15, 2014), *R. & R. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (finding prejudice "where the ALJ could have obtained evidence that might have changed the result . . .").

## IV.     RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 21st day of August, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE